UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RENE SAMUEL KENDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-388-PLR-CCS |
| | ) | |
| SEVIER COUNTY, | ) | |
| CITY OF PIGEON FORGE, | ) | |
| RUSSELL PARKER, JACK BALDWIN, | ) | |
| GARY CAMPBELL AND | ) | |
| MARIANA GUTIERREZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff brings this § 1983 action against defendants to recover for injuries allegedly sustained on August 18, 2010, when plaintiff was arrested for domestic assault. Currently pending before the court are defendant City of Pigeon Forge, Jack Baldwin, Russell Parker, and Gary Campbell's motion for summary judgment. The court has carefully considered the pending motion and the supporting exhibits in light of the applicable law. For the reasons stated herein, the court finds defendants' motion for summary judgment well-taken, and the motion will be **GRANTED.**

## III.  Factual Background

On August 18, 2010, police officers from the City of Pigeon Forge Police Department responded to a 911 call from plaintiff's residence.  Plaintiff's fourteen year old step-daughter, Alex Tuck, called 911 and told the dispatcher that plaintiff was being "very violent" against her mother, "pushing her and stuff."  Alex told the dispatcher that plaintiff had guns and knives that he carried regularly.  The dispatcher asked to talk to plaintiff, but Alex replied:

> Well, I can't because he'll just take my phone and he'll break it.  I mean, he would.  But he doesn't want to like – I don't know, like he doesn't want to listen, like he just came in and just took everything and then he started pushing my mom away and stuff because he was getting real angry towards me.

[R. 74-1].  Lisa Kendall, plaintiff's wife, eventually got on the line with the dispatcher and confirmed that plaintiff had grabbed her arm, and that plaintiff had a knife and a gun.  At this point, plaintiff had gone outside the house to his car.  Lisa Kendall told the dispatcher that she and her daughter were okay, but they preferred that plaintiff not be there.  She also told the dispatcher that plaintiff was a retired detective with the Pigeon Forge Police Department.

City of Pigeon Forge police officers Russell Parker and Gary Campbell responded to the 911 call.  Defendant Jack Baldwin is the Chief of Police for Pigeon Forge, but he did not respond to the scene of the 911 call, and had no personal involvement in the investigation or arrest of plaintiff.[1]

---

[1] Plaintiff admitted in his deposition that Chief Baldwin was not involved in the investigation or his arrest.

2

Officer Parker interviewed Lisa Kendall, and she stated that plaintiff had previously moved out of the residence, and that she had told him to leave when he came to the residence on August 18, 2010. She reported that she had been involved in a physical altercation that day with plaintiff, and they had been arguing on and off for the past couple of days. She further stated that she and plaintiff were arguing in the basement bedroom of the residence when plaintiff grabbed her left arm in an aggressive manner and moved her out of the way so he could leave the room. Lisa Kendall further stated that plaintiff's actions caused her to fear for her and her daughter's safety.

However, at her deposition, Lisa Kendall could not recall the substance of the conversations she had with either Officer Parker or Officer Campbell on the day of the incident. Lisa Kendall was asked to verify her handwriting and signature on the witness statement obtained by the officers on August 18, 2010, which she acknowledged. Lisa Kendall wrote:

> Rene [plaintiff] came here after moving out. He stated he had a right to be here after I told him to leave, he refused – He had text [sic] me all day with dirogitory [sic] things. I told him repeatedly not to come here. As Rene was getting up from the bed, he grabbed my L-arm to move me out of his way – also nudged me out of the way.

[R. 76-1].

Officer Parker interviewed plaintiff's step-daughter, Alex Tuck. Alex told Officer Parker essentially the same things she had told the dispatcher during the 911 call. Alex stated that her mother and plaintiff had been fighting, and that plaintiff had told her mother that "all she had to sell was herself" and this caused the incident to escalate. She further told Officer Parker that plaintiff jumped in her face with her mother in between

3

them. Plaintiff then grabbed her mother on the upper body and forcefully shoved her away. Alex also told Officer Parker that plaintiff was armed with a gun and a knife when this occurred. Alex gave the officers a written statement as follows:

> Well, they (my mom and Rene) had been arguing and tonight he had come in and tried [sic] to take some things. He had told my mom that the only thing that she had left to sale [sic] was herself. So that's what set everything off.
> We all had accumulated to the lower deck where he had jumped up at me, my mom had got in between us, and he then moved to the bed. And he called my mom something and she had responded and he grasped her shoulder and pushed her with force. So, I told him that if he touched her again I would call the police, and he did. And I saw the anger coming out in him so I called because I knew he was armed with guns and a knife.

[R. 76-2].

The officers interviewed plaintiff, who denied using force against either Lisa Kendall or Alex. Plaintiff admitted to the officers that he had a gun in his vehicle, and that there were guns in the residence.

In addition to taking witness statements, a female dispatcher was brought to the scene to check Lisa Kendall for any physical sign of injury. No signs of physical injury were noted by the dispatcher.

Officer Parker contacted the Sevier County magistrate on duty, Marianna Gutierrez, and informed her about the situation and the facts gathered by the officers. The magistrate told Officer Parker it was her opinion that probable cause existed for plaintiff's arrest on domestic assault. Plaintiff was then arrested, handcuffed, searched, and transported to the Sevier County Jail.

4

After plaintiff was removed from the scene, Lisa Kendall gave officers consent to search the premises for weapons. Officers conducted the search for weapons because of Lisa Kendall's allegations of domestic assault and concern for her safety. A number of weapons were removed from the residence. Lisa Kendall was given the option to retain a handgun for her safety and she accepted.

Plaintiff alleges that he, rather than his wife and step-daughter, was the victim of domestic abuse. Plaintiff states that Lisa Kendall blocked him from leaving the residence and he sustained scratches on his shoulder as a result of Lisa's Kendall's actions. Plaintiff further states that he merely moved Lisa Kendall's arm out of his way to leave and brushed by her as he left. Plaintiff avers that the officers did not believe that any assault had been committed, and they should not have arrested him.

Plaintiff has submitted an affidavit in which he states that he has received certification to teach and train police officers, correction officers, and probation officers in domestic violence. Plaintiff states that he wrote and edited the policy used by the Pigeon Forge Police Department on domestic violence. Plaintiff further states that he has responded to, and investigated, several hundred cases of domestic violence. Based on his experience, plaintiff avers that the officers on the scene failed to conduct a proper investigation, and failed to determine who was the primary aggressor in the incident. According to plaintiff, the officers made three telephone calls prior to arresting him – one to an Assistant State District Attorney, one to a detective, and one to a "new, inexperienced" Magistrate. Plaintiff avers that the officers failed to take photos of the home, people present, evidence of a crime committed, and injuries observed. In addition,

5

plaintiff avers that the officers failed to conduct a background investigation, including whether there had been any prior domestic violence calls to the residence. [R. 98].

Plaintiff alleges that he was arrested without probable cause by members of the City of Pigeon Forge Police Department.  Plaintiff further alleges various violations of his constitutional rights, such as illegal search, illegal seizure, excessive force, failure of the municipal defendants[2] to properly train and/or supervise their officers, and civil conspiracy.

Defendants City of Pigeon Forge, Jack Baldwin, Russell Parker, and Gary Campbell move for summary judgment asserting that the undisputed facts in this case and the applicable law show that these defendants are entitled to judgment as a matter of law on plaintiff's claims against them.

# I.   Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993).  All facts and inferences to be drawn therefrom must

---

[2] Plaintiff alleges that Sevier County had a custom or policy to arrest suspects in domestic violence cases even when no probable cause supported that arrest.  In addition, plaintiff claims that Sevier County failed to properly train and supervise its agents and employees.  However, Sevier County has not moved for summary judgment; therefore, the court will not address the liability of Sevier County on those claims.

6

be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

7

## IV. Analysis

Plaintiff has brought this action against defendants pursuant to 42 U.S.C. § 1983.

Section 1983 states in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 makes liable only those who, "while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entertainment LLC,* 428 F.3d 629, 636 (6th Cir. 2005). To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: (1) that the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that the plaintiff was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *Gardenhire v. Shelby County,* 205 F.3d 303, 310 (6th Cir. 2000).

### A. Fourth Amendment Claims

Plaintiff alleges that he was arrested without probable cause, was subjected to an unlawful search, and that the officers used excessive force in arresting him.

#### 1. Excessive Force

A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that "the force used in effecting the seizure was

8

objectively unreasonable." *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). However, the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical force, coercion, or threat thereof to effect it. *Graham,* 490 U.S. at 396.

At his deposition on June 26, 2013, plaintiff admitted that none of the officers on the scene, on the day of his arrest, used any excessive force against him. He further stated that he did not feel intimidated by any of the officers on the scene. Plaintiff also admitted that he is making no claim for any physical injury or any medical expenses related to his arrest. Given plaintiff's testimony on the issue of force and the lack of any factual basis to support a claim, the court finds that plaintiff's claim fails as a matter of law, and defendants' motion for summary judgment will be granted as to plaintiff's excessive force claim.

### 2. Unlawful Arrest

Plaintiff claims he was unlawfully arrested without probable cause. Officers have probable cause to make an arrest if the facts and knowledge within their knowledge at the time of the arrest are sufficient to warrant a prudent person in believing that the plaintiff had committed or was committing an offense. *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2001); *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1998). Probable cause requires a "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. McClain,* 444 F.3d 556, 562 (6th Cir. 2005). Probable cause is established if there is an objectively reasonable basis for the belief that a crime has been committed. *Id.* at 563. "The establishment of probable cause requires only a

9

probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrick v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). "The court should ask whether the officers acted reasonably under the settled law and the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant,* 502 U.S. 224, 228 (1991). Once probable cause is established, an officer is under no obligation to continue investigating and may instead pursue the arrest of the suspect. *Crockett v. Cumberland College,* 316 F.3d 571, 581 (6th Cir. 2003). In the domestic violence context, police officers need only have a belief in the probability that an offense was committed, even if they lack proof of every element of the offense. *Thacker v. City of Columbus,* 328 F.3d 244, 256 (6th Cir. 2003).

Here, plaintiff was charged with domestic assault pursuant to Tenn. Code Ann. § 39-13-111:

Domestic Assault –
(a) as used in this section, "domestic abuse victim" means any person who falls within the following categories:
     (1)  Adults or minors who are current or former spouses;
     (2)  Adults or minors who live together or who have lived together;
         . . .
     (5)  Adults or minors who are related or were formerly related by marriage; or
     (6)  Adult or minor children of a person in a relationship that is described in subdivisions (a)(1)-(5).

(b)  A person commits domestic assault who commits an assault as defined in § 39-13-101 against a domestic abuse victim.

Tenn. Code Ann. § 39-13-111.

Assault in the State of Tennessee is defined by Tenn. Code Ann. § 39-13-101:

Assault –
(a) A person commits assault who:
     (1) Intentionally, knowingly or recklessly causes bodily injury to another;
     (2)  Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
     (3)  Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101.

The record reveals that probable cause existed for plaintiff's arrest.  Plaintiff's step-daughter, Alex Tuck, placed a 911 call.  On the recording of the call, Alex is audibly shaken when she reports that plaintiff "pushed" her mother; that plaintiff was being "violent" with her mother; and that plaintiff was armed with a gun and a knife.  During the call, Lisa Kendall confirmed these statements to the dispatcher, and related that plaintiff had actually moved out of the residence prior to this incident.  Then, the officers responded to the scene, and interviewed plaintiff, Lisa Kendall, and Alex Tuck.  Officer Parker observed the distressed demeanor of both Lisa Kendall and Alex Tuck. Lisa Kendall and Alex Tuck told the officers that plaintiff had been aggressive towards them. Officer Parker testified he made his decision to arrest plaintiff based on "the statements of Mrs. Kendall, along with Alex Tuck, their demeanor at the scene, Alex was extremely distraught, crying, stated that Mr. Kendall had grabbed her mother and shoved her with

11

force.  All those facts pointed to Mr. Kendall being the primary aggressor."  These facts establish that the officers were informed that plaintiff was acting violently toward his wife and step-daughter, he had pushed his wife, and he had made an aggressive move toward his step-daughter.  Plaintiff has offered no evidence to dispute the facts within Officer Parker's knowledge at the time he made the arrest. Thus, the facts known to Officer Parker at the scene easily establish probable cause for plaintiff's arrest for domestic assault.

In his response to the motion for summary judgment, plaintiff states that Alex Tuck, in her deposition, "admitted that most of her statement was a lie."  Even assuming Alex later recanted her statement, that fact is irrelevant as to what the officers knew at the time of the incident and plaintiff's arrest. The undisputed testimony shows that the officers interviewed Lisa Kendall and Alex Tuck multiple times prior to calling the Magistrate for her opinion regarding probable cause for plaintiff's arrest.  Only after the interviews of the victims were concluded and the case to the Magistrate was made, was plaintiff arrested.  A review of the facts of plaintiff's arrest, even viewed in a light most favorable to plaintiff, shows that probable cause existed to arrest him on the charge of domestic assault.  Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *see also Toward v. Robinson*, 2010 WL 419990 at *4-6 (E.D.Mich. 2010) (summary judgment should be granted where the undisputed facts conclusively establish a "fair probability" of domestic violence).

Accordingly, defendants are entitled to summary judgment on plaintiff's claim for unlawful arrest.

### 3. Unlawful Search

Plaintiff claims that his residence was searched unlawfully. Plaintiff's response to defendants' motion for summary judgment does not address this claim, and pursuant to Local Rule 7.2, plaintiff's failure to respond is deemed to be a waiver of any opposition to the relief sought. *See Taylor v. Unumprovident Corp.*, 2005 WL 3448052 (E.D.Tenn. 2005) (holding that an argument not addressed in the responding party's brief is deemed waived). Notwithstanding plaintiff's lack of response, the court finds the claim for unlawful search to be without merit.

Generally, the Fourth Amendment prohibits warrantless searches inside an individual's home absent some exigent circumstances. *Payton v. New York,* 445 U.S. 573, 587 (1980). However, the Fourth Amendment's protection does not apply if consent is given by one who has actual or apparent authority over the item or place to be searched. *United States v. Caldwell,* 518 F.3d 426, 429 (6th Cir. 2008). When one person consents to a search of property owned by another, the consent is valid if "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *United States v. Jenkins,* 92 F.3d 430, 436 (6th Cir. 1996).

At the time the officers conducted the search of plaintiff's residence, Lisa Kendall told the officers that plaintiff had "moved out," leaving only her and her daughter as residents in the home. Both Lisa Kendall and Alex Tuck told the 911 dispatcher and the

13

officers responding to the scene that plaintiff was armed with weapons – a gun and a knife. Lisa Kendall reported that plaintiff had assaulted her. Alex Tuck confirmed to the officers that plaintiff had assaulted her mother. Plaintiff had been arrested and removed from the scene when Lisa Kendall gave consent to the officers to search the residence for weapons. Given these facts, the search of plaintiff's residence was clearly reasonable under the Fourth Amendment. *See Fernandez v. California,* 134 S. Ct. 1126, 1137 (2014) (police could conduct warrantless search of defendant's apartment following defendant's arrest based on consent to search by woman who also occupied apartment). Accordingly, the court finds defendants are entitled to summary judgment on plaintiff's claim for unlawful search.

## B. Claims under § 1985 and § 1986 (Civil Conspiracy)

Plaintiff alleges defendants engaged in a "conspiracy" to violate plaintiff's civil rights. Again, plaintiff has failed to respond to defendants' arguments on these claims, and he is deemed to have abandoned them. *See McPherson v. Kelsey*, 125 F.3d 989, 995096 (6th Cir. 1997)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones"). Notwithstanding plaintiff's lack of response, the court finds that plaintiff's claims of civil conspiracy fail on the merits.

42 U.S.C. § 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." This section applies only to private

conspiracies predicated upon racial or class-based discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 101-02 (1971). To prevail on such a claim in this context, it is necessary to allege a conspiracy, the acts in furtherance thereof, and that the acts stemmed from a class-based animus. *Place v. Shepard,* 446 F.2d 1239 (6th Cir. 1981). Further, a plaintiff must allege specific acts or means by which the defendants were alleged to have conspired. *Copely v. Sweet,* 234 F.2d 660 (6th Cir. 1956). Where a plaintiff merely alleges a § 1985 conspiracy in conclusory fashion, without alleging any class-based animus and without alleging any specific acts or means, the § 1985 claim must be dismissed. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1462 (E.D.Mich. 1986).

Section 1986 provides a cause of action against a person who neglects to prevent a violation of § 1985. Without a violation of § 1985, there can be no violation of § 1986. *Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir. 1980). Where a plaintiff has no § 1985 claim, his claim under § 1986 fails as a matter of law. *Haverstick Enter. Inc. v. Financial Federal Credit, Inc.,* 803 F.Supp. 1251, 1260 (E.D.Mich. 1992).

Plaintiff has not alleged a conspiracy in anything more than a conclusory fashion; he has not alleged any particular acts whatsoever that were done in furtherance of a conspiracy. Further, his complaint fails to allege any class-based animus. Accordingly, the court finds defendants are entitled to summary judgment on plaintiff's claim for civil conspiracy under 42 U.S.C. § 1985(3). As plaintiff cannot maintain a claim under § 1985, his claim for an alleged violation of § 1986 also fails, and defendants are entitled to summary judgment on that claim as well.

## C. Qualified Immunity

Defendants Jack Baldwin, Russell Parker, and Gary Campbell assert they are entitled to qualified immunity as to plaintiff's constitutional claims against them. The doctrine of qualified immunity shields "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ewolski v. City of Brunswick,* 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The United States Supreme Court has articulated a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. Under this test, district courts must:

> Consider whether the facts alleged show the officer's conduct violated a constitutional right. If the plaintiff can establish that a constitutional violation occurred, a court should ask "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.

*Lyons v. City of Xenia,* 417 F.3d 565, 571 (6th Cir. 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to plaintiff to demonstrate that the defendant is not entitled to the defense. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiff must (1) identify a clearly established right alleged to have been violated, and (2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was

16

undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

The key inquiry in determining whether a right was clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *Ewolski*, 287 F.3d at 503. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. Although the conduct in question need not have been previously held unlawful, the unlawfulness must be apparent in light of pre-existing law. *Id*. Officers are entitled to qualified immunity "when their decision was reasonable, even if mistaken." *Pray*, 49 F.3d at 1158.

The record in this case establishes that Jack Baldwin, Russell Parker, and Gary Campbell are entitled to qualified immunity for their actions. First, plaintiff has failed to show that Chief Jack Baldwin had any personal involvement in the investigation or arrest of plaintiff. Therefore, the court finds that Chief Jack Baldwin did not violate any of plaintiff's clearly established constitutional rights. Accordingly, given his lack of involvement, the court finds that Chief Jack Baldwin is entitled to qualified immunity as to plaintiff's constitutional claims.

As to Officers Russell Parker and Gary Campbell, the court has found that probable cause existed for plaintiff's arrest on August 18, 2010; that Lisa Kendall consented to the search of plaintiff's residence; and that no excessive force was used in arresting plaintiff. Therefore, no constitutional violation occurred. Assuming, *arguendo*,

17

that a constitutional violation occurred, the court further finds that Parker and Campbell would be entitled to qualified immunity for their actions on August 18, 2010. A reasonable officer on the scene would believe that probable cause existed for the arrest of plaintiff for domestic assault. Even though plaintiff denied using force against Lisa Kendall and Alex, the officers were under no duty to give credence to plaintiff's version of events. *See Cross v. City of Kent,* 867 F.2d 259, 263 ("A policemen . . .is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provided probable cause").

Moreover, the officers called the Sevier County Magistrate on duty and told her the facts as known to them. It was the Magistrate's opinion that probable cause existed for the arrest of plaintiff on domestic assault. A reasonable officer, under the totality of these facts, would conclude that probable cause existed to arrest plaintiff on domestic assault charges. An officer is entitled to rely on the probable cause determination of a judicial magistrate. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012); *Cox v. Hainey*, 391 F.3d 25, 34-36 (1st Cir. 2004) (Courts may rightly consider an official's reliance on the objectively reasonable advice of a prosecutor or judicial magistrate in the qualified immunity calculus). As the officers consulted in good faith with the Magistrate, their conduct was objectively reasonable, and they would be entitled to qualified immunity as to plaintiff's arrest.

Finally, as for plaintiff's claim for unlawful search of his residence, the court has previously found that consent was obtained from Lisa Kendall, who resided in the

18

residence. Therefore, no constitutional violation occurred. Assuming, *arguendo*, that an unlawful search occurred, the court would find that the officers are entitled to qualified immunity. As stated previously, when one person consents to a search of property owned by another, the consent is valid if "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Jenkins,* 92 F.3d at 436; *see also Fernandez,* 134 S. Ct. at 1137 (police could conduct warrantless search of defendant's apartment following defendant's arrest based on consent to search by woman who also occupied apartment). Therefore, the court finds that the officers' reasonably relied on the consent given by Lisa Kendall to search the residence. Accordingly, the officers are entitled to qualified immunity on this claim as well.

## D. Claims against the City of Pigeon Forge

Plaintiff alleges that the City of Pigeon Force had "a custom or policy to arrest persons accused of domestic assault regardless of proof or circumstances or lack of probable cause." Plaintiff also alleges that the City failed to adequately train and supervise its officers.

The undisputed facts of this case fail to show that the plaintiff's constitutional rights were violated by any of the officers on the scene. Thus, any allegations by plaintiff of failure to train or supervise in this case are moot. Nor do the facts support plaintiff's allegation that the City had a policy of arresting persons for domestic assault without probable cause. Because no underlying constitutional right was violated, there can be no liability as it relates to the City of Pigeon Forge. The Sixth Circuit has held that if there

19

is no underlying constitutional tort, any allegations of failure to train and supervise are moot and do not state a cause of action for which relief may be granted. *See Hancock v. Dodson,* 958 F.2d 1367, 1376 (6th Cir. 2002).

## E.  State Law Claims

Plaintiff has also asserted claims for malicious prosecution, false arrest and imprisonment, assault and battery, and civil conspiracy against defendants under Tennessee law.  Initially, the court finds that plaintiff has not responded to the defendants' motion on the state law claims, and the time for doing so has expired. *See* Local Rule 7.1.  Defendants' motion for summary judgment may be granted on this basis alone; however, the court finds that the state law claims should be dismissed as a matter of law, as well.

### 1.  Claims against the City of Pigeon Forge

The City of Pigeon Forge asserts immunity from these claims under the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.*  Specifically, Tenn. Code Ann. § 29-20-205 states:

> Public officers and employees; negligent acts or omissions
>
> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> . . .
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.

Tenn. Code Ann. § 29-20-205(2).

Defendants are correct that this section does not remove the City's immunity from suit for plaintiff's claims of malicious prosecution, and false arrest and imprisonment. Accordingly, the court finds that the City is entitled to summary judgment on these claims.

Next, the City asserts it is entitled to immunity from plaintiff's claims for assault and battery, citing this court's opinion in *Campbell v. Anderson County*, 695 F.Supp.2d 764 (E.D.Tenn. 2010). In that case, the court found Tenn. Code Ann. § 29-20-205(2) provides that immunity from suit of all governmental entities is removed or waived for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of "civil rights." Here, plaintiff's tort claims of assault and battery brought against the City of Pigeon Forge under Tennessee law are predicated on the alleged violation of his civil rights by City police officers. Plaintiff's allegations clearly arise out of and directly flow from the allegations that the officers violated his civil rights. Because plaintiff asserts claims against the City in the context of a civil rights case, any alleged injuries arise out of "civil rights," and the City is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(e). Accordingly, summary judgment is granted to the City of Pigeon Forge on plaintiff's claims for assault and battery.

**1. Claims against Chief Jack Baldwin, Russell Parker, and Gary Campbell**

First, plaintiff's claims against Chief Jack Baldwin under Tennessee law will be dismissed. Plaintiff admitted in his deposition that Chief Baldwin was not personally involved in the investigation or arrest of plaintiff.

Next, the court will address plaintiff's claim of civil conspiracy. Under Tennessee law, a civil conspiracy is defined as "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir. 1998) (citing *Braswell v. Carothers*, 863 S.W.2d 733, 737 (Tenn.Ct.App. 1993)). The requisite elements of the cause of action are "common design, concert of action, and an overt act. Injury to person or property, resulting in attendant damage, must also exist." *Menuskin*, 145 F.3d at 770. Additionally, civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Hauck Mfg. Co. v. Aztec Indus. Inc.*, 375 F.Supp.2d 649. 660 (E.D.Tenn. 2004). Plaintiff's complaint fails to meet the necessary elements for a civil conspiracy under Tennessee law.

Conspiracy is not a cause of action, but "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs*. LLC, 461 F.Supp.2d 629, 642-43 (M.D.Tenn. 2006). As with the claim for civil conspiracy under § 1985, plaintiff has not alleged a conspiracy in anything more than a conclusory fashion. It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations

22

unsupported by material facts will not be sufficient to state such a claim under § 1983. *Guierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987) (affirming grant of summary judgment where plaintiff's allegations lacked the requisite material facts and specificity necessary to sustain a conspiracy claim). Here, plaintiff has failed to produce any specific evidence that the defendants acted in concert to commit an unlawful act. Accordingly, plaintiff's conspiracy allegations fail as a matter of law, and the court finds that defendants are entitled to summary judgment on this claim.

Next, plaintiff has asserted claims against defendants under Tennessee law for false arrest, false imprisonment, and malicious prosecution. To successfully prosecute a claim of false arrest and imprisonment, plaintiff must prove that he was unlawfully detained or restrained against his will. *Coffee v. Peterbuilt of Nashville, Inc.*, 795 s.W.2d 656, 659 (Tenn. 1990). In order to prosecute a claim for malicious prosecution, plaintiff must prove that (1) defendants instituted a judicial proceeding without probable cause, (2) defendants brought such judicial proceeding with malice, and (3) the judicial proceeding was terminated in plaintiff's favor. *Himmelfarb v. Allain*, 380 S.W.3d 35, 38 (Tenn. 2012). As stated previously, the court finds that probable cause existed for plaintiff's arrest on August 18, 2010. After the officers concluded their investigation, they called the Sevier County Magistrate and relayed the facts as known to them. It was the magistrate's opinion that probable cause existed for the arrest of plaintiff, so it cannot be said that defendants instituted a judicial proceeding without probable cause, or acted with malice. While it is true that the domestic assault charges against plaintiff were ultimately dismissed, this fact alone, without more, is insufficient to establish a claim for

23

malicious prosecution. Accordingly, the court finds that defendants are entitled to summary judgment on plaintiff's claim for false arrest and imprisonment.

Finally, the court will dismiss plaintiff's claim for assault and battery under Tennessee law. Plaintiff admitted in his deposition that the officers did not use unreasonable force against him, nor was he intimidated by the officers. Given plaintiff's testimony, the court finds that defendants are entitled to summary judgment on plaintiff's claim for assault and battery.


## V. Conclusion

In light of the foregoing discussion, defendants City of Pigeon Forge, Jack Baldwin, Russell Parker, and Gary Campbell's motion for summary judgment [R. 74] is **GRANTED**, and they are **DISMISSED** as defendants in this action.

Defendant Sevier County did not move for summary judgment, so those claims remain before the court for trial. [3]

Enter:

_____
UNITED STATES DISTRICT JUDGE

---

[3] Mariana Gutierrez was previously dismissed as a defendant in this case [R. 39].

24